700 So.2d 15 (1997)
Clifford I. ZALAY and Helen A. Zalay, Appellants,
v.
ACE CABINETS OF CLEARWATER, INC., Stewarts Carpet Gallery, Inc., Magoulis Tile, Inc., Artistic Surfaces, Inc., and Olympia Tile (USA), Inc., Appellees.
No. 96-01540.
District Court of Appeal of Florida, Second District.
August 1, 1997.
Rehearing Denied September 23, 1997.
*16 R. Nathan Hightower of Macfarlane, Ferguson & McMullen, Clearwater, for Appellants.
J. Murray Milliken, Floral City, for Appellees Ace Cabinets, Magoulis Tile, Stewarts Carpet Gallery, and Artistic Surfaces.
J. Meredith Wester of Ruden, McClosky, Smith, Schuster & Russell, P.A., Tampa, for Appellee Olympia Tile.
ALTENBERND, Judge.
Clifford I. Zalay and his wife, Helene A. Zalay, (the Zalays) appeal an amended final judgment in a construction lien[1] action filed by several subcontractors and materialmen. We affirm the judgment. We conclude the evidence supports the trial court's decision that all but one of the claims were valid and timely, and thus, created liens against the real property. Even though the amount remaining unpaid by the Zalays on the contract with the general contractor was approximately $45,000, we affirm the trial court's decision to allow liens in excess of $100,000 because the amounts above $45,000 represent attorneys' fees and costs incurred by the lienors in their successful actions to establish and foreclose the liens. Finally, we affirm the monetary judgment in favor of Artistic Surfaces, Inc., on a quasi contract theory.
In late 1992, the Zalays contracted with Charles Walker Corporation, an Authur Rutenberg franchisee, to build a home in Pinellas County.[2] The total contract price was approximately $360,000. From the Zalays' perspective, the project was plagued with problems and delays. Nevertheless, by September 1993, they had made their last progress payment, and only the final payment remained outstanding. After allowing for certain set-offs, the trial court ultimately determined that the unpaid final payment was $45,267.07.
Except for a few small projects, most of the work on this home was finished by the end of September. Several of the subcontractors and materialmen remained unpaid at the end of December. Ace Cabinets of Clearwater, Inc. (Ace), served a notice to owner in late September and recorded a claim of lien for approximately $20,000 in late December. The evidence presented to the trial court supports its decision that the lien was validly and timely recorded. The cabinets constructed by Ace were not so unique that they could not be used in another Rutenberg home. As such, the Zalays did not establish that Ace's claim came under the exception requiring earlier notice for specially fabricated work. See Stunkel v. Gazebo Landscaping Design, Inc., 660 So.2d 623, 625 n. 2 (Fla.1995).
Magoulis Tile, Inc. (Magoulis), was the subcontractor that provided and installed tile in this home. It served a notice to owner at the end of September and filed its claim of lien in early January 1994. The approximate amount of this claim was $5,000.[3] We conclude the trial court did not abuse its discretion in determining that this lien was validly recorded within the 90-day period in light of sufficient evidence that some final work was *17 performed in November. See § 713.08(5), Fla. Stat. (1993).
Olympia Tile (USA), Inc. (Olympia), was a materialman supplying tile to Magoulis. It provided a notice to owner and recorded its claim of lien in the amount of $6,000 at about the same time that Magoulis served its notice and recorded its claim. Although the quantity of tile supplied within the statutory 90-day period was relatively small, we conclude that the trial court did not abuse its discretion in recognizing Olympia's claim of lien.
The claims of these three lienors total approximately $31,000. Stewart Carpet recorded a claim of lien for approximately $4,500, which was not disputed at trial. As discussed later, Artistic Surfaces, Inc., presented an untimely claim for $2,600. All of these claims total less than $40,000. Thus, prior to the litigation, the potential liens were slightly less than the unpaid amount on the contract with Charles Walker Corporation. The Zalays engaged in extensive litigation with these construction lienors. Ultimately, they lost on nearly every issue. The lienors' total attorneys' fees and costs in this case exceeded the amount of the claims for the work and services they provided.
Although the record is somewhat unclear, we assume that the Zalays made no improper payments and that their property was entitled to the limitation of lien described in section 713.06(3)(h), Florida Statutes (1993), which provides:
When the owner has properly retained all sums required in this section to be retained but has otherwise made improper payments, the owner's real property shall be liable to all laborers, subcontractors, sub-subcontractors, and materialmen complying with this chapter only to the extent of the retentions and the improper payments, notwithstanding the other provisions of this subsection. Any money paid by the owner on a direct contract, the payment of which is proved to have caused no detriment to any certain lienor, shall be held properly paid as to the lienor, and if any of the money shall be held not properly paid as to any other lienors, the entire benefit of its being held not properly paid as to them shall go to the lienors.
The Zalays maintain that section 713.06(3)(h) limits the amount of the liens against their home to the unpaid balance on their contract with Charles Walker Corporation. They argue that the additional fees and costs may be reduced to a monetary judgment, but that no lien can be created against their homestead to assist in the collection of the judgment.
The critical issue is whether the language of section 713.06 permits the attorneys' fees and costs ultimately awarded under section 713.29 to become a lien against the property. We conclude that the limitation in section 713.06(3)(h) is intended to define the extent of the lien for the lienor's materials or services prior to litigation, and is not intended to preclude a lien for costs and attorneys' fees in a lien foreclosure action.
Although the Zalays' argument relies primarily on section 713.06(3)(h), it is instructive to examine section 713.06(1), Florida Statutes (1993):
A materialman or laborer, either of whom is not in privity with the owner, or a subcontractor or sub-subcontractor who complies with the provisions of this part and is subject to the limitations thereof, has a lien on the real property improved for any money that is owed to him for labor, services, or materials furnished in accordance with his contract and with the direct contract. The total amount of all liens allowed under this part for furnishing labor, services, or material covered by any certain direct contract must not exceed the amount of the contract price fixed by the direct contract except as provided in subsection (3).
Nothing in this statute expressly provides a lien for attorneys' fees and costs. Thus, the Zalays' argument could apply in virtually any lien action involving persons not in privity.
Since 1977, the construction lien statutes have provided that they should not be liberally construed in favor of any person. See ch. 77-353, § 15, at 1533, Laws of Fla; § 713.37, Fla. Stat. (1993). As a creature of statute, construction lien laws must be strictly construed. Stunkel, 660 So.2d at 625. Nevertheless, these statutes must be construed *18 as a whole in light of the legislature's intended policies. Ceco Corp. v. Goldberg, 219 So.2d 475 (Fla. 3d DCA 1969). The attorneys' fees awarded under section 713.29 are not an element of damages, but are "taxed as part of ... costs." We see no reason why the costs involved in a construction lien action should not be included within the lien.
If a lien is transferred to a security, the deposit or bond must include an amount to cover three years' interest and $500 "to apply on any court costs which may be taxed...." § 713.24(1), Fla. Stat. (1993). Although the $500 amount is far less than the costs in this case, the legislature would have made no allowance for costs if it did not intend the costs to create a lien against the property. We note that the $500 limitation for costs does not preclude the lienor from requesting a higher bond, and costs above $500 may be paid from the bond. Aetna Cas. & Surety Co. v. Buck, 594 So.2d 280 (Fla.1992). Thus, the lien we recognize in this case to include costs is consistent with the treatment the Zalays could have received if they had chosen to transfer the lien to security.
This decision appears consistent with, but not compelled by, the discussions of this statute in DiStefano Construction, Inc. v. Fidelity & Deposit Co., 597 So.2d 248 (Fla.1992); Shipwatch Development Corp. v. Salmon, 646 So.2d 838 (Fla. 1st DCA 1994); All-Brite Aluminum, Inc. v. Desrosiers, 626 So.2d 1020 (Fla. 2d DCA 1993); and In re Hallmark Builders, Inc., 54 B.R. 120 (Bankr. M.D.Fla.1985). Accordingly, we hold that the trial court did not err in including the attorneys' fees award as a cost item to be included in the liens imposed upon the Zalays' property.
Finally, Artistic Surfaces, Inc., built a pool deck at this house. The deck was one of the final construction jobs on the project and was completed between mid-November 1993 and early January 1994, well after the last progress payment. Artistic Surfaces did not receive approximately $2,600. Its claim of lien was invalid because its notice to owner was untimely. Nevertheless, the trial court granted a monetary judgment in favor of Artistic Surfaces based on unjust enrichment. The trial court relied upon this court's decision in Zaleznik v. Gulf Coast Roofing Co., 576 So.2d 776 (Fla. 2d DCA 1991). Recently, Judge Gross, writing for the Fourth District, en banc, has greatly improved upon the analysis in Zaleznik, and has encouraged the courts to identify such a claim either as a contract implied in fact or as a quasi contract. Commerce Partnership v. Equity Contracting Co., 695 So.2d 383 (Fla. 4th DCA 1997). Relying upon the Fourth District's reasoning, we conclude the evidence supports the trial court's decision to award Artistic Surfaces a monetary judgment on a quasi contract theory.
Affirmed.
DANAHY, A.C.J., and PATTERSON, J., concur.
NOTES
[1] Although it is still common to refer to such actions as "mechanics" lien cases, that term has not been used in chapter 713, Florida Statutes, since 1991. See § 713.001, Fla.Stat. (1991); ch. 90-109, § 1, Laws of Fla.
[2] Technically, the house is owned by a trust, and the Zalays are the trustees. At this time, the parties do not contest that this house is the Zalays' homestead. The trust status of the property ownership does not affect the outcome on the issues presented in this appeal, and accordingly the opinion does not separately refer to the trust.
[3] The claim of lien was initially larger because it included a claim for Olympia Tile, Inc.